Case number 15-1401. Wilfred I. Aka, Appellant v. United States Tax Court. Ms. Aka for the Appellant, Ms. Rubin for the Appellee. Good morning. Good morning, ma'am. I guess if I seem nervous, it's okay. Good morning. There is a persuasive case that came down after the briefs had been submitted on this issue that was a case from Utah Supreme Court. And that case is a OPC v. Sead case. It's a 2006 U.T. 25 case, which is very, very persuasive on this case. On that particular case... What's the citation, 26 what? That is 2006 U.T. 25. And on that case, the Supreme Court of Utah dismissed a disbarment-ish case that is very much analogous to this particular situation and indicated that since the court believed that the appellant in that case, Mr. Sead, is rehabitable, that they should have not found disbarment. They should have suspended him for a lengthy situation. And that, I can cite exactly what that case says. It says that if what he did was before the court, that he was belligerent, claiming discrimination, failed to file papers when he's supposed to file certain papers, failed to appear in court, failed to do these things before the court, and they looked at aggravated circumstances regarding his experience in court, and they felt that since he can be rehabilitated, he should be able to have been suspended, and then the court actually dismissed the disbarment and reinstated his license, saying that the length of the time is good enough for the actual thing that he did. Appellant actually relied mostly on the Grossman case that was cited on the briefs. And on that, I just found while I was preparing the jurisdiction brief that the court asked if they have jurisdiction to hear the case, I found an article that was written by one attorney that is called Keith Fogg. And in that, Keith indicated that he was on the case of Grossman. And when he was on that case of Grossman, what Appellant failed to realize was that Grossman, although it was a criminal case, by failing to file, it was a fraudulent case, by failing to file the tax, by filing fraudulent tax return, that Appellant failed to understand that what you do outside the court doesn't get the maximum sentence, but what you do inside the court, that Appellant failed to understand that the major reason why disbarment as opposed to suspension was the fact that what Appellant did was before the court, as opposed to Grossman being outside the court. However, to that argument, still the same court, the two courts that I cited for these two cases, still reached the same decision. They still felt that since in those two cases they felt that this person is rehabilitable, that's the reason why it came down to the fact that it should be a suspension as opposed to disbarment. So when I... When these things are looked at, if we look at what the court indicated on September 6, 2015 case ruling on this particular decision, it says that the appellant should be able to go back and do what is necessary for them to... And they refer to Rule 202 of the Task Force Rule of Practice and say that if he does that, he should be able to request for restatement. But that was the very thing. Looking at that rule, the rule was not clear as to what would satisfy the Honorable Court as to what the appellant need to do. Even the appellant called the task force personnel to ask what would be a criteria or what needs to be given to the court in order for them to be able to really reconsider their case. They told me... They told the appellant that there's no set thing that is set. All you need to do is to reapply and see what they will tell you at the end of the case. And if you look at the Rule 202-FF, it was not clear as to what anyone needs to do in order to get back into the restatement. If we look at the California Rule that guides the practice of this profession, if they despise you or if they give you a suspension, they will inform you that you need to do this, this, and this in order for you to request. Take continuing education, go before the... Have another practice with another attorney or do something to make sure that you understand what the situation is. Here, as in the case of Utah case, it's very much similar. Five years, get admitted to practice 2006. Then in 2011, then they started disciplinary action. On the appellant's case, on the case before the court now, get admitted in 2009. In 2014, disciplinary action instituted. And that court still says that the length of practice or the experience would give the notion that he could be learning all this way until he gets to the speed. And if the court has the question, based for the question as to what actually happened, I know that this is not a de novo trial, but if the court inquires as far as what actually happened before the court for them to reach the decision that they reached, the court will see that it is overreaching. And they have that... Appellant is... The major reason why appellant really needed a clear court guideline as to what will make one be... After you've been rehabilitated, appellant is aware of the color of his skin. Knowing that whatever that... It depends on however people view you, would they actually say that you have been rehabilitated? Thank you. Thank you. All right. Go ahead. Excuse me, go ahead. Thank you. All right. Counsel for Appellant. May it please the court. My name is Jennifer Rubin, and I represent the tax court in this case. Here, the tax court found that in numerous cases, Mr. Aka violated professional duties owed to clients, to opposing counsel, and to the court, that he acted incompetently, but also knowingly disobeyed court rules and orders. What is the standard of review for us here? It's abuse of discretion. The only thing that's de novo is the jurisdictional question that was addressed in the supplemental brief. I know that opposing counsel in his reply brief suggested plenary review, but didn't cite anything to support the claim that that would be applicable. And here, there really was no abuse of discretion. So historically, what I found was interesting, this is an Article I court. Yes. But historically, it was a federal agency. Yes. And so it's being treated essentially in the same way that some Article I courts are treated. Yes. And just out of curiosity, was the jurisdictional question discussed with the tax court? Yes. All right. Essentially, if this court doesn't have jurisdiction to hear this appeal, it's not clear to us that anybody does, because it seems this is the only court that has venue under 7482B. In other cases, you could potentially have a situation where you would have agreement for a different venue, but the wording seems to only apply when you have a taxpayer and the Commissioner of Internal Revenue as parties. So it appears, based on the wording of 7482B, that this is the only court that potentially has jurisdiction. And traditionally, the final decisions of the court have been treated essentially like district court decisions in terms of appealability. Is a disbarment similar to a district court decision? Well, it's similar to a district court's order disbarring or disciplining. It's more like an order, right? Right. But I think the fact that it uses the term decision, at least in Inverworld, certainly seemed to indicate that that's not dispositive on the jurisdictional question. But the real question is, what was Congress trying to give the court's authority for? It said decisions. It said decisions. But ultimately, what the Inverworld court decided was, you know, look to finality. If it's final in the same way it would be final under 1291, then it is a final decision for purposes of appealability under 7482A. And we think that's a reasonable analysis. But certainly the language is decisions. Well, I'm just curious, because in a way, if we don't have jurisdiction, that's really not a problem for the tax court, is it? That means their order is final. I think that would be the ultimate conclusion. You know, I think, I guess the question is, is it going to be reviewed by this court at all for discretion, or is it not going to be reviewed? And there's a different issue, too. I mean, because he's arguing for essentially a merits review, that we should decide whether or not the court was right. He's not arguing, which, you know, would perhaps be something a little more amenable, which is that there was a problem with due process, right? Right. You know, as I said, in his reply brief, Mr. Ackes suggested that there should be plenary review. But there's really no basis for that. You know, in district court cases where there has been decisions rendered, there's been one suggestion, and that is in the grievance committee case, that if there's a question as to whether a conduct violated a particular rule, that might be subject to plenary review. But otherwise, the choice of punishment — But if we didn't have jurisdiction, does that raise the due process problem, that there's no place for him to go besides the agency of the court that disbarred him? I would say no, because there actually isn't — the due process that the court has talked about in terms of disbarment cases is really just notice and opportunity to be heard. I imagine if there was a question, if there was a case that came forward — Appeal isn't part of that? Appeal isn't part of due process? The Supreme Court and the other courts have not said that. Granted, there hasn't been that sort of — this question hasn't directly come forward. But certainly in this case, there was notice and opportunity to be heard. And Mr. Hackett doesn't deny that. The question is, do you have a right to appeal? You have a right to appeal. Is that an integral part of due process? There certainly are situations where Congress has specified that there is no appeal right. And I don't have one in my head at this point. But there are times when there are things that are just not appealable. And whether this — Maybe that's why we're an inferior court. We're just not part of the due process. But I think we certainly operated under the assumption when we wrote the brief that this court had jurisdiction. No, I know. That's why we asked for supplemental briefing on this question. And just to follow up a little bit on Judge Brown's point, as I understand it, if this is an order of disbarment, you could characterize it, I suppose, as a decision. But there are lots of orders issued by the tax court that we don't have any jurisdiction over. All kinds of administrative things they do. We don't have any — those aren't decisions that we would review. And the whole context of it is that we're going to look at, you know, the tax court when it's exercising its adjudicatory authority. And we're going to review those decisions. Right. And otherwise, the tax court runs its own show. Right. And which, again, goes to, again, why the claim of plenary review doesn't make any sense in our mind and what he said in his reply. As far as the jurisdictional question goes, certainly there are a number of orders that are done by the tax court that are not reviewable or certainly not reviewable in the way that this came through. And what makes this different? I suppose that, you know, some of the case law that's been cited, including a couple of cases that were cited from the D.C. Court of Appeals. So we went to whether this is a judicial decision or an administrative decision. And I don't think this court has ruled on that specific question. Well, it's interesting about the D.C. Court of Appeals because before the 1970 Act, you could appeal to the D.C. Circuit. And then Congress decided to make the D.C. Court of Appeals like a state highest Supreme Court or like the Massachusetts Judicial Supreme Court or the Maryland Court of Appeals. And so it was an Article I court. And we don't review its decisions on discipline. Right. And so that's why I wanted to know and wanted to look at what was the history of the tax court. And that's why I started out by saying it started as an administrative agency. Right. And apparently the Congress has decided to treat the tax court very much like it created the D.C. Court of Appeals before court reform, namely it's an administrative agency or it's sitting over the District of Columbia, which is being treated as an administrative agency in those days, pre-home rule. And so we do have jurisdiction, but that is what kind of jurisdiction do we have? I thought that was the thrust of Judge Brown's question. Well, I guess what I'm saying is when I mention these D.C. Court of Appeals cases is they address the question as to whether a decision to disbar or to not allow admission was judicial or administrative, and which went to the question as to whether it went to the D.C. Court of Appeals, as opposed to not the D.C. Circuit but the D.C. Court of Appeals. And they determined in those cases that they were judicial. But certainly if this is deemed to be an administrative provision, this court could, I think, read this provision to say that's not the sort of order that's considered to be a decision for purposes of 7482A. I was thinking the administrative agency context, like the SEC, when it decides to bar a person from practicing before the agency, those matters will come to us. Right. But there we have jurisdiction over decisions and orders of. Now, it is the case that the tax court is now considered to be an Article I court. You know, that was Congress changed its specification. When did it do that? You're saying it's not an Article I court? It is an Article I court. That's right. It started out as an agency. Right, that's what I'm getting at. Right. It's an Article I court. Right. It is an Article I court. It's no longer an agency. How about the Military Court of Appeals? That's an Article I court, too, isn't it? We don't review their disciplinary decisions. I'm really not. And so my point is, there are Article I courts and there are Article I courts. And the question is, what jurisdiction do we have? Right. And I thought Judge Brown was focusing on the word decision. Yes. And we're trying to figure out what that means. Yes. And unless you look at 7459, there's no statutory definition of what decision means. This court, certainly in previous cases, has treated the tax court disciplinary orders as appealable. And we cited a number of those cases, including these and Rodriguez. Well, your first cite was, and therefore it's assumed that the court decided it had jurisdiction. Right. Well, under Stoll, we got leave, and by deciding it, the court implicitly decided it had jurisdiction. If we had found a specific case where this court had ruled specifically on this question, we certainly would have cited it. So there's just the implicit. That's why the legislative history of what is the tax court, what did Congress have in mind in saying decisions? The language decisions comes from, I think that's been in place since before it became an Article I court. It just didn't get changed. If you look at some of the cases that were cited, such as the State of Smith and some of those older cases from the 1960s, if you look at California Eastern, they're looking at a predecessor to 7482 that also used the term decisions. So that term has been the same, as I understand it, as to whether it's been an agency or a court. But I'm thinking of our jurisdiction even as the district court, and there were changes from final decisions, final decisions and orders, to final judgments. Right. So these words have meant something to Congress. They have, though I don't know that in the, I haven't seen anything in connection with 7482 to indicate that they thought one way or the other as to whether something that the tax court terms an order, whether that is appealable under 7482. Really the last time that I could see that there was really any sort of searching analysis of this was really at the time that Inver World came down, when there was a question as to what to do when you had an order of the tax court that addressed some but not all of the claims in a case. And there was a debate amongst the courts of appeals as to whether that produced an appealable order or not. But from what I can see, I'm aware of nothing where either the court has directly addressed this question or where there's really Congress having said one way or the other, whether it thinks that the court of appeals should have jurisdiction over a tax court order of disbarment. So we simply looked at our jurisdiction into terms of 28 U.S.C. 1291. That's right. That's what Inver World did. And essentially, it's sort of just looking at decisions and saying, well, this incorporates the concept of finality. And that was the question, is this a final order of the tax court? So it said we're not going to look whether it fits within the separate categories that are found in 7459. We don't see any indication that's what Congress wanted. And we're also concerned that that would mean that some orders might not get appealed or might not get appealed until really late in the case, which is a decision on intervention. And it said we really think that what Congress wanted was for the same standards as found in 1291 to apply in 7482A. That certainly is how I read Inver World. If there are no further questions on jurisdiction, would you like me to address the questions of regarding the tax court's reasoning on the disbarment order? I'm just curious, what do you have to do to get reinstated? You know, as with this Court's rules on reinstatement, there's this language that says, basically, you need to establish that, and let me make sure I have the exact language. Reinstatement will not be detrimental to the integrity and standing of the Court's bar or to the administration of justice or subversive of the public interest. What does the tax court rule say? That's what the tax court rule says. Same thing. And it's very, very similar to the language from this Court's disciplinary enforcement rule 7B. And I think the reason why you're seeing language like that is kind of twofold. The first thing is there's really no one set of instructions that could possibly tell a person that was disbarred what to do because people get disbarred for different reasons. You know, if you got disbarred because you were disbarred by your state court, that might entail something different than here where he wasn't disbarred because of something that happened in California. He was disbarred because of activities in front of the court. outside of the court. I read the court to be saying that in representing clients in cases before the court, that was where the court was finding a problem, that it had issued a reprimand and his conduct had not responded accordingly. I think that's very much the case. I don't think, no, that the tax court agrees that there is some great distinction between conduct outside the court and conduct before the court. You know, for instance, in Grossman, they did find that conduct that happened outside the court merited disbarment. But certainly in this case, it was conduct before the court, particularly after the CAIR reprimand in 2011 that merited disbarment. And the second reason why I think that a lot of these disbarment rules contain a provision like that, like the one in the tax court rules, is a court that has disbarred somebody has said you've done something pretty egregious. And the court needs to be able to have the discretion to have you come before the court and have them judge your credibility as to whether you understand your duties and you really do intend to fulfill them and you have a plan for how to fulfill them so that we don't have to worry you're going to breach them again. And in a lot of ways, if you read the court's orders, and also even if you read Mr. Acker's briefs here, there's a powerful sense that he didn't really seem to understand what his duties were and why it was such a problem that he was breaching them. He even claimed in his reply brief that, oh, the tax court found he didn't breach duties to clients, which isn't even true. They found that he breached duties of competence and diligence to a client, found he breached duties to opposing counsel, which he just seems to ignore routinely in his submissions, found that he breached duties to the court. And to be reinstated beyond any sort of practical steps that he might try to take, which judges did tell him about during, say, for instance, the Akolani case, gave him suggestions for things he could do. They need to be able to hear him say things in a credible way that's going to give reassurance that they're not going to have this problem. So, you know, I was particularly struck in the record by some of the things the judges said on the Giese case, the Akolani case, where they were concerned that by having Mr. Acker be a member of the bar, that they were sending a signal that he was competent and that he was going to do a good job in people's cases. And if the tax court were to reinstate Mr. Acker, that signal would again be put forth. And ultimately, courts need to have discretion once they've disbarred somebody. If they even allow reinstatement, there's nothing in the due process cases that say that reinstatement has to be permitted. But if they allow reinstatement, they need to have discretion to determine whether or not they find the claims, if you understand your duties and will fulfill them, to be credible. And to date, that's nothing that we've heard so far. And that certainly is what one thing that really concerned the court, and one of the aggravating circumstances that they found, was that he continually seemed to deny that he really violated any duties and did not seem to understand that he had duties that were not being satisfied. Otherwise, you know, based on the records, based on the really undisputed findings here, which are completely supported by all the documents from the underlying cases, and based on the fact that, yes, he's only been a member of the tax court bar since 2009, but he's been practicing in the tax world as an accountant since 1983. And he became a certified public accountant in 1994, during which time he actually started working on tax court cases as an accountant. Based on this history and based on his actions after the reprimand, we submit that disbarment was appropriate and was certainly no abuse of discretion. All right. Are there any further questions? Thank you. Thank you. Mr. Oka? Again, good morning, Your Honor. Your Honor, there is a silent difference between practicing before the administrative agencies and practicing before the court. And that silent difference was that at the time that the court, at the time that you become counsel on a case, the court only sends communication to the counsel. But in the administrative agencies, even if they send one to you, they will send one to the defender or the client. Here, it has the court, the tax court did not find that Appellant violated communication issue. They found that before that, that he did not, he didn't have the competence and was not able to do what he's supposed to do before the court. And that, they still find, that is a rehabitable situation. And based on that, going back to the issue of judicial, if this court doesn't find judicial to actually review this case, then the due process problem that the Appellant had has nowhere else to go except before the same tax court, which has preliminary authority to do what it says to do. If you say that, oh, there are different reasons why a person gets disbarred before the court, yes, there are different reasons why, but when different other judicials disbar a member of the bar, they will give you precise what they need to do. The Rule 202F is not clear as to what one needs to do. In the order of judicial disbarment, it's supposed to take, if you do this, work with this for so many years, take CE. Appellant had even taken for a reason for not knowing how to even file the brief in the initial, at some of those cases. And for one case in particular, on Brown case, the court asked Dr. Brown to find another counsel to help the same together. And the Appellant was actually relying on, because the court in front of, told the Brown to find a different counsel to help prepare the brief, relied on it. When it was past time for the brief to be filed, that's when the court came back and said, you're supposed to have filed the brief. And there was explanation as to why it wasn't filed, but the honorable members did not even want to entertain any of those reasons. But I need to point out one thing. There's a case regarding if this court should take judicial over this case. It's a Louisville case. It's a Louisville builder case. And I quote what that subsection says. It says that unless the decision of the task force can be found to fit into the language of 7459C, it is not a decision of the task force. Only where the task force specifies an amount of deficiency or dismisses a petition for lack of judicial or for other reasons can it be ordered to be reviewed. And it went further to state, by such subsection, Congress saw it fit in precise terms just what constituted a reviewable task court decision. All right. We will take your case under advisement. Thank you. Thank you, Your Honor.
judges: Rogers, Brown, Griffith